# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| **In Re:** | **Bankruptcy Case No. 07-01199-JDP** |
| CHARTERHOUSE BOISE DOWNTOWN PROPERTIES, LLC., | |
| **Debtor.** | |

| | |
|---|---|
| THE BANKRUPTCY ESTATE OF CHARTERHOUSE BOISE DOWNTOWN PROPERTIES, LLC, by and through RICHARD E. CRAWFORTH, Chapter 7 Trustee, | |
| **Plaintiff,** | |
| **vs.** | **Adv. No. 08-6056** |
| BOISE TOWER ASSOCIATES, LLC., a Washington limited liability company, | |
| **Defendant**. | |

MEMORANDUM OF DECISION - 1

THE URBAN RENEWAL
AGENCY OF BOISE CITY a/k/a
CAPITAL CITY DEVELOPMENT
CORPORATION, a government
agency,

**Intervenor Plaintiff.**

_____

**MEMORANDUM OF DECISION**
_____

**APPEARANCES:**

Richard C.  Boardman, PERKINS COIE, Boise, Idaho and Joseph M.
Meier, COSHO HUMPHREY, Boise, Idaho, Attorneys for The Urban
Renewal Agency of Boise City a/k/a Capital City Development
Corporation.

Eric S. Rossman, ROSSMAN LAW GROUP, Boise, Idaho, Attorney
for Boise Tower Associates, LLC.

### *Introduction*

In this adversary proceeding, the Court granted summary judgment

in favor of Intervenor Plaintiff Urban Renewal Agency of Boise City a.k.a.

Capital City Development Corporation ("CCDC") and against Defendant

Boise Tower Associates, LLC ("BTA").  CCDC now seeks an award for its

MEMORANDUM OF DECISION - 2

attorneys' fees and costs as the prevailing party pursuant to Idaho Code

§ 12-120(3) and LBR 7054.1.  BTA objects.  After a hearing, the Court took

the issues under advisement; this Memorandum constitutes the Court's

findings of fact and conclusions of law and disposes of the issues.[1]

### *Background and Facts*

This adversary proceeding concerned the competing claims to

amounts due under a settlement/transfer agreement between CCDC,

Charterhouse Boise Downtown Properties, LLC ("Charterhouse"), and

BTA.  The agreement was made to settle certain claims pending in state

court concerning the commercial development of an undeveloped parcel

real property in downtown Boise, Idaho, commonly referred to as the

"Boise Tower Project."

Pursuant to the agreement, BTA was obligated to pay the sum of

$950,000 to CCDC or Charterhouse for the benefit of CCDC, from any

proceeds which BTA received via judgment or settlement with any

defendants in a separate proceeding then pending in federal district court

---

[1] *See* Fed. R. Bankr. P. 7052.

MEMORANDUM OF DECISION - 3

for the State of Idaho.  In December, 2006, BTA and one or more of the

defendants in that action agreed to a settlement and release, and BTA was

paid $450,000.  Despite its obligations under the agreement with CCDC

and Charterhouse, BTA did not forward any portion of those settlement

proceeds to CCDC or Charterhouse.

Thereafter, Charterhouse filed for relief under chapter 11 of the

Bankruptcy Code, and the case was later converted to chapter 7.  On

August 11, 2008, Richard Crawforth, as chapter 7 trustee for the

bankruptcy estate of Charterhouse, filed this adversary proceeding

seeking to recover the $450,000 settlement proceeds from BTA.  On May 4,

2009, CCDC moved to intervene as a plaintiff in the adversary proceeding,

asserting its rights to the settlement proceeds.  That motion was

unopposed, and the Court granted it.  Thereafter, the trustee and CCDC

entered into a stipulation for the assignment of the trustee's claims against

BTA to CCDC, which stipulation was approved by the Court on July 28,

2009.

On November 10, 2009, CCDC filed a motion for summary

MEMORANDUM OF DECISION - 4

judgment, asserting that it was entitled to relief against BTA on its claims of breach of contract, breach of an implied covenant of good faith and fair dealing, and unjust enrichment. On December 2, 2009, BTA filed its notice of non-opposition to the motion, and on December 15, 2009, the Court entered its Order granting CCDC's motion for summary judgment. On December 21, 2009, the Court entered Judgment in favor of CCDC and against BTA in the amount of $450,000 plus prejudgment interest.

Thereafter, CCDC filed its motion seeking recovery of its attorneys' fees and costs as the prevailing party pursuant to Idaho Code § 12-120(3) and LBR 7054.1, and BTA filed its objection.

### *Discussion*

### I.

There is no general right to recover attorneys' fees under the Bankruptcy Code. *Ford v. Baroff (In re Baroff)*, 105 F.3d 439, 441 (9th Cir. 1997). However, "a prevailing party in a bankruptcy proceeding may be entitled to an award of attorney fees in accordance with applicable state law if state law governs the substantive issues raised in the proceedings."

MEMORANDUM OF DECISION - 5

*Id.* In this case, CCDC asserted state law claims based on BTA's breach of

the settlement agreement. As a result, Idaho law governed disposition of

the issues in the action, and would also control the award of attorneys' fees

and costs. *See Hopkins v. Saratoga Holdings, LLC (In re Colvin)*, 08.2 I.B.C.R.

63, 65 (Bankr. D. Idaho 2008).

CCDC contends it is entitled to attorneys' fees under Idaho Code

§ 12-120(3). That statute provides:

> In any civil action to recover on an open account, account
> stated, note, bill, negotiable instrument, guaranty, or contract
> relating to the purchase or sale of goods, wares, merchandise,
> or services and in any commercial transaction unless
> otherwise provided by law, the prevailing party shall be
> allowed a reasonable attorney's fee to be set by the court, to be
> taxed and collected as costs.

Idaho Code § 12-120(3).

This Court has held that when a party prevails in an action to

recover on a commercial transaction, an award of attorneys' fees is

mandatory under this provision. *See In re Colvin*, 08.2 I.B.C.R. at 65 (citing

*Clement v. Franklin Inv. Group, Ltd.*, 689 F. Supp. 1575, 1577 (D. Idaho 1998)

("The Idaho Supreme Court has made it clear that Idaho Code § 12-120 is

MEMORANDUM OF DECISION - 6

mandatory in its nature and has rejected an attempt by a trial judge to impose his own sense of justice in denying the mandatory award.")). However, although the award of fees is mandatory, the amount of that award is subject to the Court's discretion. *Kilborn v. Haun (In re Haun)*, 08.4 I.B.C.R. 155, 159 (Bankr. D. Idaho 2008); *In re Colvin*, 08.2 I.B.C.R. at 65 (citing *P.O. Ventures, Inc. v. Loucks Family Irrevocable Trust*, 159 P.3d 870 (Idaho 2007)).

BTA concedes that CCDC was the prevailing party in this litigation, and as a result, is entitled to an award of reasonable attorneys' fees under Idaho Code § 12-120(3). Nevertheless, BTA contends that the amount that CCDC seeks to recover as attorneys' fees in this case is unreasonable. The Court agrees, at least in part.

In determining a "reasonable" fee under Idaho Code § 12-120, a trial court is guided by the criteria set forth in Idaho Rule of Civil Procedure 54(e)(3), which identifies a nonexclusive list of factors which the court should consider. These factors include: the time and labor required; the novelty and difficulty of the questions; the skill required to perform the

MEMORANDUM OF DECISION - 7

legal service properly and the experience and ability of the attorney in the

particular field of law; the prevailing charges for similar work; whether the

fee was fixed or contingent; the time limitations imposed by the client or

the circumstances of the case; the amount involved and the results

obtained; the undesirability of the case; the nature and length of the

professional relationship with the client, awards in similar cases, the

reasonable cost of computer assisted legal research, and any other factor

which the court deems appropriate.

CCDC has requested an award of attorneys' fees in the amount of

$62,044.  To support its request, CCDC submitted the declarations of its

attorneys, together with itemizations of the time spent and the services

provided.  These submissions raise several concerns.

First, it must be remembered that CCDC did not commence this

adversary proceeding, nor was it a named party when the initial complaint

was filed on August 11, 2008.  Rather, this litigation was commenced by

chapter 7 trustee Richard Crawforth on behalf of the bankruptcy estate of

Charterhouse.  It was not until several months later that CCDC became

MEMORANDUM OF DECISION - 8

integrally involved in the litigation, eventually filing its motion to intervene on May 4, 2009.  Docket No. 26.  No objections to that motion were received, and on June 24, 2009, the Court entered an order allowing CCDC to intervene as a plaintiff, and to file a complaint.  Docket No. 41.

Although its motion to intervene was not filed until May, 2009, CCDC claims the right to recover from BTA for services rendered by its counsel dating back to January 11, 2009.  Based upon the narrative description of those services, many of the early entries relate to research and analysis of issues that were not ultimately raised in the adversary proceeding.  Neither Idaho Code § 12-120(3) nor Idaho Rule of Civil Procedure 54(e)(3) are clear as to whether attorneys' fees for counsel given in contemplation of or in preparation for litigation are compensable.  Certainly, it seems appropriate that a party be compensated for a limited amount of advice from counsel prior to undertaking litigation, and the Court will allow a modest amount here.

Up to the time the motion to intervene was filed, CCDC itemized over 110 hours of attorney services, approximately 38 hours of which was

MEMORANDUM OF DECISION - 9

dedicated to preparing the motion to intervene.  Under the circumstances of this case, this amount of pre-litigation services appears excessive. Rather than scrutinize each individual entry to determine whether or not it would be proper, the Court, in the exercise of its discretion, will simply limit the amount of compensable time for pre-litigation services to half of the amount of time requested in this case.

Next, BTA argued that fees for services related to the assignment of the claim from the chapter 7 trustee to CCDC should not be recoverable. At the hearing, in response to BTA's argument, CCDC conceded that it would not seek any fees for services related to the assignment, and estimated that approximately $6,700 of their total billings were related to the assignment.[2]  The Court's review of the billing records confirms that CCDC's attorney's estimate was indeed rough, as twenty five of the individual entries in these records make reference to the assignment, representing total billings of approximately $9,500.  This amount will be

---

[2] Counsel for CCDC cautioned that this figure was a "rough" estimate based upon its recollection of the billing records.

MEMORANDUM OF DECISION - 10

excluded from the total award.

An additional concern relates to CCDC's billing records.  Many of the individual entries in these records "lump" all legal services by each attorney into a single time entry, as opposed to separately describing each individual service, with the associated amount of time spent on that service.  For example, the entry for Mr. Boardman on April 23, 2009 states:

> Continue research and analysis of intervention procedures and requirement for separate pleading; begin draft of Complaint in Intervention; review Court's Scheduling Order in adversary proceeding; conferences with co-counsel regarding intervention pleading requirements;

Docket No. 58, Ex. A, p. 4.  For all of these services, only the total time spent, or 2.6 hours, is reported.  The entry for Ms. Benavides on June 25, 2009 is similar.  That entry states:

> Research Ninth Circuit bankruptcy cases re: assignment of claims by Trustee, procedural issues for assignee of Trustee's claims, and jurisdictional issues; review of prior pleadings from adversary proceeding including Trustee's Original Complaint, Amended Answer of BTA, CCDC brief in support of motion for intervention, and Trustee's Motion to Vacate Trial; conference with R. Boardman regarding strategy for upcoming hearing; draft and review CCDC's complaint.

MEMORANDUM OF DECISION - 11

Docket No. 58, Ex. A, p. 6.  Again, only the total time spent on all of these

services, or 5.9 hours, is reported.

This Court has consistently disfavored lumped billings as it

"deprives the Court of the ability to weigh the reasonableness of either the

amount of time spent or the amount charged for the individual services."

*In re Colvin*, 08.2 I.B.C.R. at 66.[3]  These two entries are but a few of a

myriad of examples of "lumped" entries in CCDC's billing records.

Although most of the entries represent small increments of time, the

cumulative effect over the course of approximately 75 entries is quite

substantial.  As a result, the Court will further reduce the amount of

CCDC's attorneys' fees by $10,000.[4]

_____

[3]  As this Court noted in *In re Haun*, "[l]umping affects the Court's ability
to determine the time that is actually, necessarily and reasonably expended on a
particular task."  08.4 I.B.C.R. at 159-60, n. 21.

[4]  To be clear, CCDC and its attorneys may agree to any form of billing
formats they choose.  The Court appreciates that highly detailed time and service
itemizations may be administratively unwieldy, and as a matter of business
judgment, may be disdained by the law firm.  Still, if CCDC and its counsel
intend to ask others, like BTA, to pay their attorneys' fees, and to ask the Court to
compel that payment, they must expect to account for their services with
sufficient precision to allow for an effective review.

MEMORANDUM OF DECISION - 12

Lastly, CCDC employed two different law firms to represent it in this action. According to the submissions of its attorneys, a total of seven attorneys worked on this litigation, including two attorneys working in offices outside of Idaho.[5] Counsel's declarations propose billing rates for attorney services ranging from $180 to $435, and further assert that these fees are reasonable and comparable to the fees charged by other attorneys with similar experience in the same locations as these attorneys. But aside from counsel's own assertions that these rates are reasonable in light of the experience of the respective attorneys, there is little in the record to support the higher rates in this case.

The Court regularly reviews and considers the rates charged by attorneys involved in commercial litigation, and in the Court's experience, the rates proposed by CCDC are higher than those prevailing for services in this sort of action. *Compare In re Haun*, 08.4 I.B.C.R. at 160 (reducing a proposed rate of $300 per hour to $225 per hour, a rate more consistent

---

[5] Most of the attorneys were in Boise, Idaho. One attorney was located in Seattle and another in Chicago.

MEMORANDUM OF DECISION - 13

with comparably experienced attorneys in Boise, Idaho); *In re Colvin*, 08.2 I.B.C.R. at 66 (determining that $175 per hour was reasonable, though perhaps on the high end of the range for legal services in eastern Idaho). Accordingly, the Court will adjust the hourly rates as follows: the hourly rates for attorneys Boardman and Kaplan will be reduced from $295 and $435, respectively, to $250; the hourly rate for attorney Meier will remain at $225; the hourly rates for attorneys Arnold, Walker, and Benavides will be reduced to $180; the hourly rate for attorney Whatcott will remain at $180.

In addition to the attorneys who worked on this case, it appears that several paralegals charged some of their time to this matter as well. In his declaration, Mr. Boardman represents that Margaret Marlatt is a paralegal with substantial experience in commercial litigation, and notes her hourly billing rate is $145. Although no mention is made of other staff members in the body of his declaration, two other names appear in the billing records: Kimberly Sampo and Aaron Bushor. It appears from the billing records that their hourly rates are $125 and $65, respectively. Other than

MEMORANDUM OF DECISION - 14

offer the Court his representation at the hearing that the paralegals who

assisted in this matter had significant experience, counsel for CCDC

presented no evidence nor made any other showing that these rates are

reasonable for paralegal services.  However, counsel did concede that

there was nothing particularly special or challenging about the services

these staff members rendered in this case.  Based upon the Court's

experience, these rates are considerably higher that what other attorneys in

this District generally charge for their paralegal staff services.

Accordingly, the Court will adjust the hourly rates for paralegal services in

this particular case to $65.

Accordingly, after considering all of the factors enumerated in Idaho

Rule of Civil Procedure 54(e)(3), and the additional issues noted in this

Decision, the Court concludes that the fees requested by CCDC are

excessive, but that appropriate and reasonable attorneys' and paralegal

fees in this case is $22,500.  This amount is awarded pursuant to Idaho

MEMORANDUM OF DECISION - 15

Code § 12-120(3) and the Idaho rules.[6]

## II.

In addition to its attorneys' fees, CCDC seeks to recover nearly $2,800 in costs which it claims to have incurred during the course of this adversary proceeding. In particular, CCDC identifies $304.10 in what it terms "taxable costs" and $2,494.50 "non-taxable costs." *See* Docket Nos. 57 - 59.

Costs are a procedural matter and are taxed under LBR 7054.1. *JB Constr., Inc. v. King (In re King)*, 09.1 I.B.C.R. 32, 34 (Bankr. D. Idaho 2009); *In re Haun*, 08.4 I.B.C.R. at 160; *Oldemeyer v. Couch-Russell (In re Couch-Russell)*, 04.1 I.B.C.R. 9, 11 (Bankr. D. Idaho 2004). To comply with LBR 7054.1(a), a request must itemize costs and be supported by a certificate of counsel attesting that the costs are correctly stated, were necessarily incurred, and are allowed by law. Under the local rule, taxable costs

---

[6] When the Court multiplied the modified hourly rates for lawyers and paralegals by the appropriate amount of compensable time shown in the billing records, the total was slightly less than this amount. The Court has rounded the final award for convenience.

MEMORANDUM OF DECISION - 16

include:  clerk's fees and service fees; costs of trial or other transcripts if

requested by the Court or prepared pursuant to stipulation; deposition

costs; witness fees, mileage and subsistence; costs of reproducing exhibits;

costs of maps, diagrams and charts; and other costs with prior court

approval.  A form cost bill is available to assist attorneys in complying

with the local rule.[7]

     In this case, CCDC opted for a hybrid approach, using the form cost

bill for a portion of the total costs, and describing the balance of the costs

in separate declarations.  While such an approach is not necessarily

problematic, it requires additional scrutiny to ensure compliance with LBR

7054.1.

     On the form cost bill, CCDC identifies printing costs of $60.10 and

an additional $244 for "copies of papers necessarily obtained for use in this

case."  The separate declaration further clarifies that the $60.10 was for

printing exhibits in connection with the filing of its complaint in this

---

    [7] The Bill of Costs form can be found on the Court's website at:
www.id.uscourts.gov.

MEMORANDUM OF DECISION - 17

adversary proceeding.  The $244 was "fees for outside copy services incurred as a result of copying court records from a related litigation in Ada County, Idaho involving Debtor Charterhouse in preparation for CCDC's intervention in the initial adversary proceeding brought by the Trustee."  Docket No. 58, p. 3.  It appears that CCDC seeks to recover these costs under LBR 7054.1(c)(5), which provides that the "cost of an exhibit necessarily attached to a document (or made part of a deposition transcript) required to be filed and served is taxable."  Only 33 pages were attached to CCDC's motion to intervene and only 25 pages were attached to CCDC's Complaint.  Although $304.10 appears to be an excessive cost for these items, counsel for CCDC has attested that these are correctly stated, and BTA has not objected to them.  As such, these costs will be approved.

The $2,494.50, which CCDC describes as "non-taxable costs" are itemized in two separate exhibits.  *See* Docket No. 58, Ex. B and Docket No. 59, Ex. B.  The bulk of these costs are for computerized legal research, with additional small charges totaling $14.09 for long distance telephone

MEMORANDUM OF DECISION - 18

service, postage, and PACER fees.  Counsel for CCDC asserts that such

costs are proper under LBR 7054.1(c)(8), which provides for "[o]ther items

. . . with prior court approval."  However, the Court granted no such  prior

approval to counsel, and declines to tax BTA for such costs now.  *See also*

*High Country Bed & Breakfast, Inc. v. AMRESCO Independence Funding, Inc.*

*(In re High Country Bed & Breakfast, Inc.)*, 02.2 I.B.C.R. 89, 90 (Bankr. D.

Idaho 2002) (noting that Westlaw research was not a cost that was

allowable under LBR 7054.1).

### *Conclusion*

Given that CCDC's motion to intervene in this action, and its motion

for summary judgment against BTA, were both unopposed, its request for

an award of over $65,000 in attorneys' fees and costs is plainly excessive.

In a separate order, CCDC's request for attorneys' fees under Idaho Code

§ 12-120(3) and other applicable authority will be granted in

///

///

///

MEMORANDUM OF DECISION - 19

the amount of $22,500; its request for reimbursement of costs under Fed.

R. Bankr. P. 7054 and LBR 7054.1 will be granted in the amount of $304.10.

Dated:  March 17, 2010

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 20